IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **DELORES ARLENE COLE,**            ) | |
|                                                                  ) | |
| **Plaintiff,**            ) | |
|                                                                  ) | |
| v.                                                           ) | Case No. CIV-19-380-SPS |
|                                                                  ) | |
| **ANDREW M. SAUL,**            ) | |
| **Commissioner of the Social**            ) | |
| **Security Administration,**            ) | |
|                                                                  ) | |
| **Defendant.**            ) | |

**OPINION AND ORDER**

The claimant Delores Arlene Cole requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision is REVERSED and the case REMANDED to the ALJ for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy[.]"  *Id.* § 423 (d)(2)(A).  Social security regulations implement a five-step sequential process to evaluate a disability claim.  *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied.  *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997).  Substantial evidence is "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).  The Court may not reweigh the evidence or substitute its discretion for the Commissioner's.  *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991).  But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was sixty-three years old at the time of the most recent administrative hearing (Tr. 71). She completed two years of college and has worked as a surveillance system monitor and retail salesperson (Tr. 82-83). The claimant alleges that she has been unable to work since an amended onset date of February 27, 2016, due to diabetes, poor balance, use of a cane, kidney problems, poor perception, cracked ribs, dehydration, weakness, taste bud problems, and urinary tract infections (Tr. 298, 318).

### Procedural History

In March 2016, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434 (Tr. 284-85). Her application was denied. ALJ Thomas John Wheeler held an administrative hearing and determined that the claimant was not disabled in a written opinion dated September 1, 2017 (Tr. 147-56). The Appeals Council remanded the case on May 23, 2018 (Tr. 162-63). On remand, ALJ Wheeler conducted a second administrative hearing and again determined that the claimant was not disabled in a written opinion dated January 22, 2019 (Tr. 10-21). The Appeals Council denied review, so the ALJ's January 2019 written opinion represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

### Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He found the claimant had the residual functional capacity ("RFC") to perform sedentary work with

frequent stooping, kneeling, crouching, and crawling; occasional balancing and climbing stairs and ramps; and never climbing ladders, ropes, or scaffolds (Tr. 17). As to environmental limitations, the ALJ found the claimant must avoid hazards such as dangerous moving machinery and unprotected heights (Tr. 17). The ALJ further found the claimant required the use of a cane while ambulating as well as the option to sit/stand at will without leaving the workstation or going off task (Tr. 17). The ALJ then concluded that the claimant was not disabled because she could return to her past relevant work as a surveillance system monitor (Tr. 20-21).

## Review

The claimant contends that the ALJ erred by failing to: (i) consider her rib pain, osteoporosis, glaucoma, and amblyopia at step two; (ii) find her obesity severe at step two and consider it at step three; (iii) consider all of her impairments when forming the RFC; and (iv) properly evaluate her subjective statements. The Court agrees that the ALJ erred in formulating the RFC, and the decision of the Commissioner must be reversed and the case remanded to the ALJ for further proceedings.

The ALJ found the claimant had the severe impairments of diabetes mellitus, neuropathy, degenerative disc disease, and arthritis in the knees, back, and hips, but that her obesity, affective disorder, hypertension, hyperlipidemia, and hypothyroidism were nonsevere (Tr. 13). The medical record reveals that the claimant largely received treatment for these impairments at VA facilities. As relevant to this appeal, the claimant presented to optometrist Dr. Gary Sisson on May 17, 2016, seeking glaucoma drops and reporting that she sees better with over-the-counter glasses than with her prescription eyeglasses

(Tr. 499). Dr. Sisson found the claimant's visual acuities without correction were 20/25 in her right eye and 20/200 in her left eye (Tr. 499). His impression included, *inter alia*, controlled glaucoma and left eye refractive amblyopia (Tr. 499). Dr. Sisson indicated prescription eyeglasses were not necessary and he referred the claimant to Dr. White for a "glaucoma workup." (Tr. 499). On January 23, 2017, the claimant presented to Dr. White, an ophthalmologist, and reported she was diagnosed with glaucoma in 2016 and was out of her prescription antiglaucoma eye drops (Tr. 526). He found the claimant's visual acuity was 20/40 "pinhole" 20/25 in her right eye and 20/400 "pinhole" 20/50 in her left eye (Tr. 526). Dr. White assessed the claimant with primary open angle glaucoma/low tension glaucoma, cataract (not visually significant), and amblyopia (left), prescribed eye drops, recommended continued observation, and emphasized blood glucose control (Tr. 526-27). At a follow-up appointment on April 24, 2017, Dr. White noted the claimant was tolerating her medication well, had no new eye complaints, and that her glaucoma was mild and controlled (Tr. 583-84). He found her visual acuity was 20/40 "pinhole" 20-1 in her right eye and 20/200 "pinhole" 20/40-1 in her left eye (Tr. 583). The claimant had similar appointments with Dr. White in November 2017 and April 2018 (Tr. 696-97, 711-12).

      Dr. Christopher Sudduth completed a consultative physical examination of the claimant on May 23, 2016 (Tr. 480-87). He observed the claimant's gait was steady, but asymmetric, slow, antalgic, and limping, and that she had a cane but was able to ambulate without it (Tr. 487). On range of motion assessment, Dr. Sudduth found the claimant had a mild to moderate decreased range of motion in her lumbar spine with pain on testing and full range of motion in all other joints assessed (Tr. 480-87). He indicated the claimant's

visual acuity was 20/50 in her left eye, 20/70 in her right eye, and 20/50 bilaterally (Tr. 486-87). Dr. Sudduth's impression included diabetes mellitus type 2, low back pain, bilateral hip pain, and left knee pain (Tr. 487).

On June 6, 2016, state agency physician Dr. John Vorhies completed a Physical RFC Assessment and found that the claimant could perform light work with frequent climbing ramps or stairs, stooping, kneeling, crouching and crawling; never climbing ladders, ropes, or scaffolds; and avoiding even moderate exposure to hazards such as machinery, heights, etc. due to her poor balance and history of falls (Tr. 123-25). On review, state agency physician Dr. Ronald Painton adopted Dr. Vorhies' findings except he found the claimant could occasionally climb ramps or stairs and balance (Tr. 138-41). Neither mentioned or addressed the claimant's glaucoma and amblyopia.

In his written opinion, the ALJ summarized the claimant's testimony and the medical record. In discussing the opinion evidence at step four, the ALJ gave partial weight to the state agency physicians' opinion that the claimant could perform light work with postural limitations, further limiting her to a range of sedentary work in light of her ongoing care for musculoskeletal pain and the use of a cane for balance (Tr. 20). In discussing the medical evidence at steps two and four, the ALJ did not mention or discuss the claimant's glaucoma and amblyopia.

The claimant contends that the ALJ failed to properly consider all of her medically determinable impairments and the Court agrees as to her glaucoma and amblyopia. This Court and the Tenth Circuit have repeatedly stated that, once the ALJ determined that the claimant had *any* severe impairment, any failure to find additional severe impairments will

not be a sole basis for reversal and is considered harmless. *See Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal."). Nevertheless, the ALJ *is required* consider the effects of all the claimant's impairments (individually and in combination) and account for them in formulating the claimant's RFC at step four. *Id.* ("In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original] [citations omitted]. Here, the ALJ neither noted the claimant's glaucoma and amblyopia nor determined what effect, if any, either may have had on the RFC. The Court is thus unable to determine whether the ALJ considered this evidence or simply ignored it. *See Clifton*, 79 F.3d at 1010 ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). Although the ALJ was not required to find that the claimant's glaucoma and amblyopia amounted to severe impairments, he *was* required to account for *all* her impairments, including her documented glaucoma and amblyopia for which she received ongoing treatment, at step four. *See McFerran v. Astrue*, 437 Fed. Appx. 634, 638 (10th Cir. 2011) ("[T]he ALJ made no findings on what, if any, work-related limitations resulted from Mr. McFerran's nonsevere mood disorder and chronic pain. He did not include any such limitations in either his RFC determination or his hypothetical question. Nor did he

explain why he excluded them."). This analysis was particularly important here because the surveillance system monitor job requires constant near acuity and is the only job the ALJ found the claimant could return to at step four.

Because the ALJ failed to properly account for *all* the claimant's impairments at step four, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further analysis. If such analysis results in any adjustment to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner decision is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 11th day of March, 2021.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**